Charles C. McKenna (SBN 167169)
Brian J. Wagner (SBN 239981)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA 92614-8595
Telephone: (949) 417-0999
Facsimile: (949) 417-5394
Email:   charles.mckenna@kutakrock.com
         brian.wagner@kutakrock.com
Authorized E-Service Address:
irvineintake@KutakRock.com

Attorneys for Plaintiff
DEER CREEK EGGS, LLC,
a Michigan limited liability company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEER CREEK EGGS, LLC, a Michigan limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>RABO AGRIFINANCE, LLC, a Delaware limited liability company; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) NEGLIGENT MISREPRESENTATION;**<br><br>**(2) PROMISSORY ESTOPPEL;**<br><br>**(3) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Deer Creek Eggs, LLC, a Michigan limited liability company (hereinafter "Plaintiff" or "Deer Creek"), for its Complaint against Defendants Rabo Agrifinance, LLC, a Delaware limited liability company (hereinafter "Defendant" or "Rabo"), and DOES 1 through 10, Inclusive, hereby states and alleges as follows:

I. **INTRODUCTION**

1. This lawsuit seeks redress for misrepresentations by a lender throughout the loan origination process that caused the borrower to suffer substantial damages. For many months, throughout the first half of 2024, Defendant Rabo assured Plaintiff Deer Creek that approval of its loan application was a *fait accompli*, and the mere

formality of closing the transaction and funding the loan was imminent. Throughout that period, Defendant was well aware that time was of the essence, and each day of delay was detrimental to Plaintiff, as it needed the funds to construct and begin operating an egg production facility as soon as possible. After repeated delays, Plaintiff was assured closing and funding would take place on August 2, 2024. Plaintiff relied on the August 2, 2024, closing date, and planned accordingly. At no time did Defendant ever indicate that the loan would not close, let alone that there was any risk it might not be approved at all.

2. Nevertheless, August 2 came and went, and the loan did not close. Plaintiff was not provided any explanation as to why. Defendant then began asking for additional information, and Plaintiff learned that its loan application had never even been submitted to underwriting, despite numerous prior representations that the transaction was set for closing.

3. After providing all newly requested information in August, Plaintiff was informed in September 2024 that its loan application was denied. Plaintiff thereafter had no alternative but to seek alternative financing as quickly as possible, which it did, but on terms much less favorable than the terms that had been offered by Defendant.

4. Had Defendant not represented for months that the loan was ready for closing and funding, Plaintiff would have sought other financing much sooner. Defendant's conduct thus caused Plaintiff economic damages in the form of both more expensive loan terms, and lost income from the delayed opening of the egg production facility.

## II. PARTIES, JURISDICTION AND VENUE

5. Deer Creek is a Michigan limited liability company with its principal place of business located in the City of Okemos, Ingham County, State of Michigan.

6. Defendant Rabo is a Delaware limited liability company with its principal place of business in the City of Chesterfield, St. Louis County, State of

Missouri. At all times, Rabo is and was properly registered to do business in the State of California.

7. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1-10, Inclusive, and therefore sues those defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct. Plaintiff will amend this Complaint to allege the DOE defendants' true names and capacities, when ascertained.

8. Jurisdiction of this matter is properly in this Court pursuant to 28 U.S.C. section 1332, in that Deer Creek and Rabo are citizens of different states from one another, and the amount in controversy in this action is greater than $75,000.

9. Venue of this matter is properly in this Court pursuant to 28 U.S.C. section 1391(b)(2), in that the United States District Court for the Central District of California embraces the County of Orange, in which a substantial part of the events or omissions occurred which give rise to the claims asserted herein. Venue is further proper pursuant to 28 U.S.C. section 1391(b)(3), in that Rabo is subject to the personal jurisdiction of this Court.

### III. FACTUAL ALLEGATIONS

10. In January of 2024, Deer Creek reached out to Rabo about obtaining a loan. Deer Creek was seeking financing from Rabo for the purchase and construction of the real property located at 22660 Olnhausen Road, Sturgis, Michigan 49091. The purpose of the loan was for Deer Creek to buy the property, convert existing chicken barns to accommodate layers, and produce egg products for sale to the public. From the inception, Deer Creek made it clear to Rabo that time was of the essence, and that undue delay in the process would result in economic losses to Deer Creek.

11. Thus began an odyssey of delays, hollow promises, misrepresentations, and false reassurances from Rabo, which abruptly and unexpectedly came to light on

1  August 2, 2024, the date set for loan closing and funding as unconditionally promised
2  by Rabo, and eagerly anticipated by Deer Creek, only to not occur.

3      12. More specifically, from January to August of 2024, Deer Creek was
4  repeatedly assured by Rabo that the loan was never in jeopardy, and the mere
5  formality of closing the transaction was pending. Despite numerous delays caused by
6  Rabo, Deer Creek was reassured by Rabo that closing would indeed take place on
7  August 2, 2024, and Deer Creek reasonably relied on those representations. The
8  chronology of events is exemplified by the following communications.

9      13. In an email dated June 20, 2024, Linda Wolf of Rabo stated:
10          "I talked internally and due to the holiday it is going to be very
11          tight to get things done by the for the (sic) July 3.  I can commit
12          to being able to do it on July 15th (emphasis added)"

13      14. Nevertheless, closing did not occur on or before July 15. Accordingly,
14  in an email exchange dated July 15, 2024, Broker John Dresser reached out to several
15  individuals at Rabo, concluding:
16          "Turning our attention to the question – When can we conduct
17          the closing this week?"

18      15. In response, Linda Wolf of Rabo stated:
19          "We are looking at a date of August 2."

20      16. And in another email exchange dated July 15, 2024, Brent Roland on
21  behalf of Deer Creek informed Ms. Wolf:
22          "Since closing was supposed to be today, the extension is
23          expiring. We need a new closing date in the next couple hours
24          so an extension can be negotiated before the end of the day."

25      17. In response, Ms. Wolf stated:
26          "Realistically, the 29th would be great ... I know that isn't going
27          to go over well and my apologies for the delays."

28

18. Mr. Roland replied:

> "Seller is asking if Rabo is committed to closing on this date .."

19. Ms. Wolf did not in any manner question, qualify or condition Rabo's commitment to closing on August 2. In fact, at no point did anyone at Rabo in any fashion indicate there was any reason for Deer Creek to believe the transaction would not finally close on that date. Rabo never qualified any of its representations, nor ever inform Deer Creek that there was even a possibility the transaction would not go through.

20. Throughout this time, Rabo was well aware of the imperative that the loan close as quickly as possible, and that Deer Creek was relying on the repeated assurances that the loan would in fact close. Rabo was provided Deer Creek's financials, was knowledgeable about its business model, and knew that the failure to close the loan transaction would result in significant economic losses to the company. Nevertheless, Rabo continued to represent that the closing of the loan would indeed occur, and never communicated anything to the contrary.

21. Deer Creek was shocked when the loan transaction did not close and fund on August 2. 2024. Rabo provided no explanation. Instead, Rabo began asking for new and additional information. Deer Creek complied with all requests for information, though it was troubled and confused as to why such due diligence was being jump started again. It hoped for closing with Rabo in the near future, which was still quicker than having to start the loan origination process again, from scratch.

Nevertheless, Linda Wolf eventually informed Brent Roland by email on September 18, 2024, in pertinent part:

> "After thorough analysis and given the size of the requested $15mln debt facility, unfortunately credit is not comfortable with moving forward with the requested project."

22. In other words, after months of repeated assurances that closing was imminent, a pending formality, Deer Creek's loan application was denied.

23. Perhaps just as egregious, it appears the entire loan process had never even got off the ground, and that Rabo never advanced the initial paperwork for further processing and evaluation by underwriting, a stunning fact that flies in the face of the repeated representations that the process was near completion, with formal closing of the transaction being imminent.

24. For months, Deer Creek was led to believe that closing was a foregone conclusion, and despite the delays on Rabo's end, would finally occur on August 2, 2024. Rabo never once stated or even indicated that approval could be denied. Deer Creek reasonably relied on Rabo's continued representations that the transaction would in fact close, it was just matter of time.

25. Had Rabo not made commitments to financing the project and closing the loan in a timely fashion, causing Deer Creek to detrimentally rely on Rabo's promise of financing, Deer Creek could have and would have obtained alternative financing much earlier, on better terms then they eventually secured, in order to finance the subject egg production facility, and would have been producing eggs by the end of August 2024.

26. Instead, and based on Rabo's repeated assurances of closing, Deer Creek "stayed in the game" with Rabo for many months. Deer Creek never would have done so but for its reasonable reliance on Rabo's assurances of closing the loan transaction.

27. As a result of Rabo pulling out the rug at the eleventh hour, Deer Creek had no alternative but to obtain alternative financing as quickly as possible, on less favorable terms, in order to preserve the purchase and construction of the subject property. Because of the different terms, and over the life of the loan, Deer Creek will pay $6,268,051 more over the life of that loan than it would have paid under the life of the Rabo loan.

28. Moreover, the delays by Rabo cost Deer Creek months of egg production, resulting in upwards of $22.2 million in lost profits.

## **FIRST CLAIM FOR RELIEF**

### **(Negligent Misrepresentation – Against All Defendants)**

29. Plaintiff incorporates and reallege all paragraphs above as though set forth fully herein.

30. A claim for negligent misrepresentation may arise where one asserts, as a fact, that which is not true, having no reasonable ground for believing it to be true, and intending that the plaintiff rely upon the assertion.

31. As set forth above, Rabo made untrue representations as to past and existing material facts throughout 2024. More specifically, Linda Wolf of Rabo repeatedly represented to Deer Creek that its loan application was complete, was not in jeopardy, and that the transaction would successfully close on August 2, 2024.

32. None of the above representations was true.

33. Nor did Rabo have any reasonable ground for believing those statements were true. Ms. Wolf and others at Rabo knew that the loan application had not yet even been submitted to underwriting for evaluation and approval when the aforementioned representations were made to Deer Creek.

34. Rather, the aforementioned representations were made in order to induce reliance by Deer Creek to believe that the loan application would soon be formally approved, and that closing was imminent, so that Deer Creek would stay with Rabo and not seek financing elsewhere.

35. Deer Creek justifiably and reasonably relied on the aforementioned representations. Rabo never once stated or even indicated that approval and closing could be denied.

36. As a direct and proximate result of Deer Creek's justifiable and reasonable reliance on Rabo's representations, Deer Creek suffered economic damages. The loan it ultimately obtained from a different lender will result in it paying $6,268,051 more over the life of that loan than it would have paid under the life of the Rabo loan. Additionally, the delays by Rabo cost Deer Creek months of

egg production, resulting in upwards of $22.2 million in lost profits.

## SECOND CLAIM FOR RELIEF

### (Promissory Estoppel – Against All Defendants)

37. Plaintiff incorporates and reallege all paragraphs above as though set forth fully herein.

38. The doctrine of promissory estoppel is well-established: a promise which the promisor should reasonably expect to induce definite and substantial action or forbearance on the part of the promisee, and which does induce such action or forbearance, is binding in injustice can be avoided only by enforcement of the promise.

39. As set forth above, Rabo made clear and unambiguous promises to Deer Creek, to wit, that its loan application would successfully close on August 2, 2024.

40. Rabo then breached that promise, by denying the loan application.

41. Deer Creek actually and justifiably relied on Rabo's promises, by staying with Rabo and not seeking financing from other sources.

42. Deer Creek's reliance was both reasonable and foreseeable, as Rabo never once stated or even indicated that approval and closing could be denied.

43. Moreover, Deer Creek's reliance was detrimental. As a direct and proximate result of Deer Creek's justifiable and reasonable reliance on Rabo's promises, Deer Creek suffered economic damages. The loan it ultimately obtained from a different lender will result in it paying $6,268,051 more over the life of that loan than it would have paid under the life of the Rabo loan. Additionally, the delays by Rabo cost Deer Creek months of egg production, resulting in upwards of $22.2 million in lost profits.

44. Injustice can be avoided only by enforcing Rabo's repeated promises that the loan transaction was set for imminent closing.

///

///

## THIRD CLAIM FOR RELIEF

## (Negligent Interference with Prospective Economic Advantage – Against All Defendants)

45. Plaintiff incorporates and reallege all paragraphs above as though set forth fully herein.

46. A cause of action exists for negligent interference with another's prospective economic advantage if the defendant acts unreasonably and wrongfully, so as to foreseeably disrupt a business advantage of another with whom the defendant has a special relationship.

47. As set forth above, there existed a prospective business relationship between Deer Creek and its customers, of which Rabo was made well aware by Deer Creek, including the fact that time was of the essence to close the loan transaction, as needed for Deer Creek to purchase and construct the subject real property in order to meet the immediate needs of its egg customers.

48. Based on the parties' special relationship, Rabo owed a duty of care to Deer Creek.

49. Rabo wrongfully interfered with the relationship between Deer Creek and its customers. As set forth above, Rabo acted unreasonably, by making clear and unambiguous promises to Deer Creek, to wit, that its loan application would successfully close on August 2, 2024, so as to foreseeably disrupt Deer Creek's economic advantage, *i.e.,* its sales to customers.

50. As a direct and proximate result of Rabo's interference with Deer Creek's economic relationships with its customers, of which Rabo was well aware, Deer Creek suffered months of lost egg sales to its customers, resulting in upwards of $22.2 million in lost profits damages.

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deer Creek Eggs, LLC, prays as follows:

(1) For entry of judgment in its favor and against Defendant Rabo Agrifinance, LLC, in an amount to be proven at trial;

(2) for prejudgment and post judgment interest as provided by law; and

(3) for such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable.

Dated:  January 15, 2026				KUTAK ROCK LLP

						By: /s/ *Charles C. McKenna*
							Charles C. McKenna
							Brian J. Wagner
							Attorneys for Plaintiff,
							DEER CREEK EGGS, LLC